UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PRIMAX RECOVERIES INC., | : |
| | : |
|     Plaintiff, | : |
| | : |
|     v. | : |
| | :   CASE NO. 3:03CV01931 (AWT) |
| CATHERINE YARMOSH, JOHN | : |
| TSCHUMMI, NATIONWIDE MUTUAL | : |
| INS. CO. and STRATTON FAXON, | : |
| | : |
|     Defendants. | : |

**RECOMMENDED RULING ON PARTIES' DISPOSITIVE MOTIONS**

This action was brought by the plaintiff, Primax Recoveries Inc. ("Primax") in its capacity as the subrogation and collection agent for CIGNA Healthcare ("CIGNA"), to recover funds that the defendants allegedly owe to CIGNA.[1]

Primax alleges that both of the individual defendants, Catherine Yarmosh and John Tschummi, were injured in unrelated accidents, and that both received medical benefits from CIGNA. (Compl., Count One, ¶11, Count Three, ¶ 27.) Each of them has since recovered funds, or attempted to recover funds, from the

---

[1] The court will assume, for purposes of these motions, that Primax is properly a plaintiff in this action as an agent of CIGNA. Primax has submitted an affidavit of its general counsel stating that "Primax has been duly appointed and authorized by [CIGNA] to administer and prosecute all of [CIGNA's] rights and claims to subrogation and reimbursement." (Affidavit of Henry S. Romano, Jr., ¶ 4.) Primax has not submitted any other evidence of its relationship with CIGNA to substantiate its claim that it is entitled to stand in CIGNA's shoes in this action, and the defendants do not concede its right to do so.

tortfeasors who injured them. (Compl., Count One, ¶¶12, 17, Count Three, ¶ 28.)  Both defendants have failed to reimburse CIGNA for the medical expenses it paid on their behalf.  (Compl., Count One, ¶19, Count Three, ¶ 30.)

In addition to the individual defendants, there are two other defendants.  One is Nationwide Mutual Insurance Company ("Nationwide"), the insurer of the tortfeasor who injured defendant Yarmosh. (Compl., ¶¶ 3,18.)  Nationwide allegedly paid a tort settlement to Yarmosh, and Primax seeks recovery of a portion of that settlement in this lawsuit. (Compl., ¶ 18.) The final defendant is the law firm of Stratton Faxon.[2]  The plaintiff has brought a claim of "tortious interference with business and contracts" against this firm, on the grounds that it has advised clients such as Yarmosh and Tschummi not to pay the plaintiff. (Compl., Count Four.)

The individual defendants, Catherine Yarmosh and John Tschummi, have brought a counterclaim against Primax.[3]  They allege that Primax's debt collection practices violate the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Connecticut Unfair Trade Practices Act, Conn. Gen.

---

[2]This firm represents all of the defendants in this matter.

[3]The counterclaim names "Catherine Yarmosh, John Tschummi and Dolores Townshend" as counterclaim plaintiffs and seeks class certification for "all persons who were contacted by Primax in an effort to collect an unlawful debt barred by anti-subrogation statutes."  (Counterclaim, ¶ 7.)

Stat. § 42-110a, *et seq*.  The counterclaim plaintiffs allege that Primax violated those statutes by using tactics such as "threat of legal action and the tarnishing of credit scores" (Counterclaim, ¶ 4); "harassing and threatening" collection practices (id., ¶ 5); and misrepresentation (id., Count Two, ¶ 10).

Pending before the court are four dispositive motions: Defendant John Tschummi's Motion to Dismiss (doc. #21), Defendant Catherine Yarmosh's Motion for Summary Judgment (doc. #13), Plaintiff's Motion for Summary Judgment (doc. #29), and Plaintiff's Motion to Dismiss Counterclaim (doc. #26).

Because the facts and law underlying each of the motions are quite different, the court will address each separately.

## I. DEFENDANT JOHN TSCHUMMI'S MOTION TO DISMISS

Defendant John Tschummi has moved to dismiss the claims against him on jurisdictional grounds, arguing that this case is not ripe.[4]  He states that he has not yet recovered any funds from the tortfeasor who injured him and argues that ERISA does not authorize a lawsuit by an ERISA fiduciary to stake its claim on a future, hypothetical tort recovery.

Plaintiff initially objected that its action was ripe under Great West Life & Annuity Co. V. Knudson, 534 U.S. 204 (2002),

---

[4]Tschummi also claims that the plaintiff's complaint should be dismissed under Fed. R. Civ. P. 4(m) due to the defendant's late service of process.

because it sought a constructive trust on any funds that the defendant might recover in the future. However, in a reply brief filed on September 9, 2004, the plaintiff changed its position, stating that:

> Based upon the representations of counsel that to date John Tschummi has received 'not a red cent' on his underlying personal injury case, the Plaintiff voluntarily withdraws this action as to John Tschummi, without admitting any of the defenses asserted by Defendant. Plaintiff respectfully requests leave of this Court to pursue it's [*sic*] cause of action against John Tschummi, if and when, his underlying personal injury case is settled or goes to judgment, without prejudice.

(Doc. #41 at 1.)

Pursuant to Fed. R. Civ. P. 41(a)(1), a plaintiff may voluntarily withdraw its complaint without order of court "by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." Fed. R. Civ. P. 41(a)(1). Such a voluntary dismissal of a claim "shall be without prejudice" unless the notice of dismissal states otherwise. Id.

If the plaintiff intends to dismiss its complaint against Tschummi, it may do so by filing a notice of dismissal as contemplated by Fed. R. Civ. P. 41(a)(1) within ten days of this ruling.

In light of plaintiff's stated intention to withdraw this claim, the court recommends that Tschummi's Motion to Dismiss (doc. #21) be denied as moot.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT AS TO CATHERINE YARMOSH

Pending before the court are the parties' cross-motions for summary judgment as to the claims against defendant Catherine Yarmosh.

### A. FACTUAL BACKGROUND

As part of its efforts to reduce the cost of Medicare, Congress has authorized the Center for Medicare and Medicaid Services ("CMS"), which administers Medicare, to contract with private health maintenance organizations ("HMOs") to provide coverage for Medicare-eligible individuals.  This program is known as the Medicare+ Choice program.  42 U.S.C. § 1395w-21.

Plaintiff alleges that it is a subrogation and collection agent for CIGNA, which is a Medicare+ Choice HMO. (Pl's Mem. in Support of S.J. at 1.)  Under its contract with CMS, CIGNA provides health care benefits as a Medicare+ Choice HMO for certain Medicare beneficiaries. (Compl., Count One, ¶4.)  The defendant Yarmosh was a Medicare beneficiary. (Compl., ¶11.)

On December 9, 1999, Yarmosh was badly injured in a motor vehicle collision. (Def's Local Rule 56(a)(1) Statement at 1.) During her convalescence, Medicare itself paid for some of Ms. Yarmosh's medical expenses, and additional expenses were paid by CIGNA as the Medicare+ Choice HMO.  (Id. at ¶¶ 3-4.)  Ms. Yarmosh subsequently received a settlement of $300,000 for her injuries from Nationwide Insurance Company, the insurer of the tortfeasor

who caused her injuries. (Id. at ¶ 2.)  Ms. Yarmosh satisfied the Medicare lien and received a release from Medicare.  (Id.; see also Medicare Release, attached as exhibit to Affidavit of Catherine Yarmosh.)

CIGNA was not reimbursed.  Primax brought this lawsuit to recover the expenses that CIGNA paid on Ms. Yarmosh's behalf. (Compl., ¶ 19; Def's Local Rule 56(a)(1) Statement at 4-5.)

In its motion for summary judgment, Primax contends that it is entitled to recovery from Yarmosh because (1) the statute governing Medicare Choice+ HMOs, which permits an HMO to "charge" beneficiaries for reimbursable expenses, should be interpreted to grant HMOs a cause of action in federal court for recovery of such expenses; (2) the statute permitting "the United States" to sue to recover Medicare benefits if the beneficiary subsequently receives a tort settlement should be interpreted to provide a cause of action for Medicare Choice+ HMOs as well; and (3) even if there is no federal statutory cause of action, Primax is entitled to reimbursement under the terms of its contract.

Yarmosh argues that the court lacks jurisdiction of the claims against her because the plaintiff has no statutory right to bring a lawsuit against her in federal court.[5]  She contends that the statutes on which the plaintiff relies for its federal

---

[5] The plaintiff's complaint states that jurisdiction is pursuant to 28 U.S.C. § 1331 because its claims arise under the federal law and CMS regulations. (Compl., ¶9.)

claims do not grant Medicare+ Choice HMOs a private cause of action.  She also argues that any contractual provision requiring her to reimburse CIGNA is voided by Connecticut's collateral source rule, which, she argues, prohibits such reimbursement claims.  Conn. Gen. Stat. § 52-225c.

**B.   SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of showing the absence of any genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "A party opposing a . . . motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'"  Amnesty America v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 324).  The court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

**C.   DISCUSSION**

Plaintiff first argues that it is entitled to recovery under

7

42 U.S.C. § 1395mm(e)(4), a subsection of the statute that creates and governs the Medicare+ Choice program. This provision authorizes an HMO to "charge" the Medicare beneficiary for the medical expenses the HMO has paid if the beneficiary "is entitled to benefits . . . under an automobile or liability insurance policy or plan" and "has been paid under such . . . plan, or policy for such services." 42 U.S.C. § 1395mm(e)(4). In other words, if a beneficiary has recovered a tort settlement such as the one here, the HMO can "charge" her to pay back the funds that it has expended for her medical care. The plaintiff argues that this statute also implicitly creates a private, federal cause of action permitting HMOs to sue the beneficiary if she does not pay what is due to the HMO.

Yarmosh responds that this statute does not create a private cause of action for a Medicare+ Choice HMO. The plain language of the statute only authorizes an HMO to "charge" a beneficiary for reimbursable expenses, not to sue her in federal court. Accord, Care Choices HMO v. Engstrom, 330 F.3d 786, 788-89 (6th Cir. 2003).[6] The plaintiff contends, however, that "the only

---

[6] As discussed below, this statute does empower a Medicare+ Choice HMO to include, in its contract with the beneficiary, language requiring the beneficiary to reimburse the HMO for expenses that the beneficiary later collects from other sources. Care Choices HMO v. Engstrom, 330 F.3d at 790. Such a contractual provision permits the HMO to sue for recovery of the benefits under ordinary contract law. Id., Nott v. Aetna U.S. Healthcare, Inc., 303 F. Supp. 2d 565, 571-72 (E.D. Pa. 2004). Primax alleges that its contract with Yarmosh includes such a reimbursement provision.

logical conclusion" is that Congress intended to provide a cause of action to Medicare+ Choice HMOs and that its failure to do so was a result of an "oversight." It urges the court to recognize an implied cause of action for such HMOs.

In Care Choices, the Sixth Circuit refused to read an implied private cause of action into Section 1395mm(e)(4). Id., 788-89. As the Care Choices court determined, there is no evidence of a legislative intent to create a private cause of action under this statute. Care Choices, 330 F.3d at 789-90. To the contrary, "[t]he entirety of § 1395mm is aimed at creating preconditions for and regulating the behavior of HMOs that substitute for Medicare," suggesting that the intent of the statute is to "explain what Medicare-substitute HMOs are still permitted to do -- namely, include a provision in their own policies making them a secondary insurer -- and is not intended to create an affirmative right to collect from other sources of insurance via an action in federal court." Id. at 790.

The Second Circuit has not addressed this issue. However, the Care Choices court's decision that there is no implied private cause of action relied on the same standard applicable in the Second Circuit. See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 286 F.3d 613, 618-19 (2d Cir. 2002).[7]

---

[7]The Second Circuit's standard, derived from the Supreme Court's decision in Cort v. Ash, 422 U.S. 66, 78 (1975), centers on four factors: "(1) legislative intent, (2) the consistency of the

The Sixth Circuit's interpretation is buttressed by the Supreme Court's recent decision in <u>Empire Healthchoice Assurance, Inc. V. McVeigh</u>, __U.S.__, 126 S.Ct. 2121 (2006)(although statute granted private insurance carrier the right to seek reimbursement from liable third parties, there was no implied federal cause of action to sue for such reimbursement). The Court urged restraint in the recognition of implied causes of action:

> Congress could decide and provide that reimbursement claims of the kind here involved warrant the exercise of federal-court jurisdiction. But claims of this genre, seeking recovery from the proceeds of state-court litigation, are the sort ordinarily resolved in state courts. Federal courts should await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States.

<u>Id.</u> at 2127.[8]

This court agrees with the <u>Care Choices</u> court that there is no private cause of action for a Medicare+ Choice HMO under the Medicare+ Choice statute, 42 U.S.C. § 1395mm(e)(4).

Primax next argues that another section of the Medicare

---

remedy with the underlying purposes of the legislative scheme, (3) whether the plaintiff was a member of the class for whose benefit the statute was enacted, and (4) whether the cause of action is one traditionally relegated to state law." <u>Hallwood Realty</u>, 286 F.3d at 618. The central inquiry is whether Congress intended to create a private cause of action. "As this circuit has explained, the remaining <u>Cort</u> factors (other than congressional intent) now enter into the analysis only as possible indicia for legislative intent." <u>Id.</u>, 619.

[8]Congress has not, in the three years since <u>Care Choices</u> was decided, amended the Medicare statute to provide a private cause of action.

statute, 42 U.S.C. § 1395y(b)(2)(B)(ii), entitles it to sue for recovery of the medical expenses CIGNA paid on Yarmosh's behalf.[9]

The provision on which plaintiff relies authorizes the United States (in the form of the Medicare program) to bring a lawsuit in federal court to recover the expenses it paid for a Medicare-eligible individual if another entity, a "primary payer," is liable for those costs.[10] 42 U.S.C. § 1395y(b)(2)(B)(ii). A primary payer includes, for example, another insurer which should have been the beneficiary's primary health insurer, a worker's compensation program that should have paid the expenses, or the auto insurer of the tortfeasor who injured the beneficiary. 42 U.S.C. § 1395y(b)(2)(A).

The statute does not expressly grant a cause of action to any entity other than the United States. Plaintiff contends, however, that the term "United States" should be read broadly to include a Medicare+ Choice HMO such as CIGNA. It argues that Congress's failure to amend the statute to include Medicare+ Choice HMOs when it created the Medicare+ Choice system must have been an oversight, because Congress intended such HMOs to stand

---

[9] The provision provides that "In order to recover payment under this subchapter . . . the United States may bring an action against any entity which is required or responsible . . . to make payment . . ." 42 U.S.C. § 1395y(b)(2)(B)(ii).

[10] This statute is commonly known as the Medicare Secondary Payer statute, because it provides that Medicare is the secondary, not the primary, payer if there is another available source of benefits.

in Medicare's shoes and to have the same rights and obligations as Medicare.

Plaintiff does not cite any legislative history or statutory analysis to support its argument, and none of the cases it cites support this interpretation of the term "United States." The plain language of the statute is clear and unambiguous, and, particularly in light of the Supreme Court's admonitions in Empire Healthchoice Assurance, Inc. V. McVeigh, __U.S.__, 126 S.Ct. 2121 (2006), the court will not read "United States" to include CIGNA or Primax.

As a result, the HMO's remedy, if any, is under state contract law. Id., 790; see also Nott v. Aetna U.S. Healthcare, Inc., 303 F. Supp. 2d 565 (E.D. Pa. 2004). Yarmosh argues that Primax's state law contract claim fails as a matter of law under Connecticut's collateral source statute, Conn. Gen. Stat. § 52-225c. See also Pajor v. Wallingford, 47 Conn. App. 365 (1997) (holding that a reimbursement provision in an insurance contract was invalid because it conflicted with Conn. Gen. Stat. § 52-225c). Plaintiff, in response, argues that Medicare payments do not fall within the collateral source rule, so they are reimbursable. It relies on a Connecticut Supreme Court case holding that Social Security disability payments are not collateral source payments. Schroeder v. Triangulum Assoc.s, 259 Conn. 325 (2002). But there is no Connecticut case directly on

point as to Medicare or Medicare+ Choice payments, and plaintiff recognizes that the present case is "a case of first impression with regard to Medicare benefits." (Pl's Mem. at 5.)

"[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers v. Gibbs, 38 U.S. 715, 726 (1966). Under 28 U.S.C. § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The court has not dismissed all of the federal claims in this case. The defendant Nationwide Mutual Insurance Company has not moved for dismissal of the federal claim against it, and that claim therefore remains pending. A district court may, however, decline to hear claims of novel or complex state law even where federal claims remain in the case. 28 U.S.C. § 1367(c)(1),(2).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity," Kolari v. New

York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)(internal citations and quotation marks omitted). The question of whether Medicare payments fall within the collateral source rule is a novel issue of Connecticut law best left to the Connecticut courts.  Although the plaintiff still has federal claims, it now appears that this state law issue will "substantially predominate . . . in terms of proof, of the scope of the issues raised [and] of the comprehensiveness of the remedy sought."  Giordano v. New York, 274 F.3d 740, 754 (2d Cir. 2001).  The value of comity outweighs the inconvenience to the parties.  "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

The court therefore recommends that the plaintiff's pendent state law claims be dismissed without prejudice to its right to replead these claims in state court. Id.

For the foregoing reasons, the court recommends that defendant Catherine Yarmosh's Motion for Summary Judgment Catherine Yarmosh (doc. #13) be granted and that the plaintiff's Motion for Summary Judgment as to Catherine Yarmosh (doc. #29) be denied.

### III. **PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

Finally, plaintiff has moved to dismiss the defendants'

counterclaim. Plaintiff's sole substantive argument in support of its motion to dismiss is that its own reimbursement claims in this lawsuit have merit under federal law. Plaintiff argues that it could not have been in violation of state and federal debt collection law in bringing this lawsuit, because it was merely asserting its valid rights under federal law.

In light of the court's holding that Primax's federal law claim against Ms. Yarmosh fails as a matter of law, and Primax's voluntary withdrawal of its claim against Tschummi, this argument cannot be the basis for dismissal of the counterclaim.[11]

Plaintiff also argues that this court lacks jurisdiction of the counterclaim, apparently on the grounds that the amount in controversy is insufficient to support diversity jurisdiction. The court need not decide this issue, however, because the counterclaim plaintiffs do not rely exclusively on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). They allege a violation of a federal statute, 15 U.S.C. § 1692k, and therefore also rely on federal question jurisdiction under 28 U.S.C. § 1331. The defendants have sufficiently alleged federal question jurisdiction of the counterclaim.

---

[11]In fact, the counterclaim plaintiffs do not rely solely on this litigation for their allegations of wrongful conduct. Rather, they allege unfair debt collection practices such as misrepresentation and threats of litigation. Primax's motion to dismiss does not address those non-litigation activities, nor does it address the claims of the third named counterclaim plaintiff or the putative class action plaintiffs.

15

## IV.   CONCLUSION

For all these reasons, the court recommends that defendant Yarmosh's Motion for Summary Judgment (doc. #13) be granted and that the plaintiff's Motion for Summary Judgment (doc. #29) be denied.

In light of plaintiff's stated intention to withdraw its claim against defendant John Tschummi, the court recommends that Tschummi's Motion to Dismiss (doc. #21) be denied as moot.

Finally, the court recommends that the plaintiff's Motion to Dismiss the Counterclaim (doc. #26) be denied.

Any party may seek the district court's review of this recommendation.  See 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300(2d Cir. 1992)(failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

SO ORDERED at Hartford, Connecticut this 7th day of September, 2006.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge